# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **KANDIE R. WRIGHT,** | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 1:08cv00052 |
| | ) | |
| v. | ) | |
| | ) | |
| **DAVID H. SMITH, M.D.** | ) | **REPORT AND** |
| and **ABINGDON SURGICAL** | ) | **RECOMMENDATION** |
| **ASSOCIATES, P.C.,** | ) | |
| | ) | |
| Defendants. | ) | By: PAMELA MEADE SARGENT |
| | ) | UNITED STATES MAGISTRATE JUDGE |

This case is currently before the court on the parties' cross-motions for summary judgment. Specifically, the defendant, Abingdon Surgical Associates, P.C., ("ASA"), filed a Motion For Summary Judgment, (Docket Item No. 27), on May 15, 2009. Thereafter, on May 18, 2009, the plaintiff filed a Motion For Partial Summary Judgment, (Docket Item No. 28). Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1332. These motions are before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). These motions were heard on June 19, 2009. Based on the parties' written arguments and representations to the court, and as directed by the order of referral, the undersigned now submits the following Report And Recommendation.

*I. Facts*

On February 20, 2007, Wright presented to the emergency department at

-1-

Johnston Memorial Hospital in Abingdon, Virginia, and was diagnosed with acute appendicitis with probable rupture. The emergency room physician consulted with the defendant, Dr. David H. Smith, M.D., who admitted Wright to the hospital with a diagnosis of acute appendicitis. On the same day,[1] Dr. Smith attempted an appendectomy on Wright. Dr. Smith began the surgery as a laparoscopic procedure, but due to difficulties with visualization and mobilization, he converted it to an open procedure. Despite this conversion, Dr. Smith continued to have visualization problems, but he proceeded with the surgery, removing tissue that he felt confident contained Wright's appendix. This tissue was sent to pathology for analysis. According to Wright, a progress note from Dr. Smith dated February 22, 2007, states that Wright had increased pain despite being on a Dilaudid patient-controlled analgesia, ("PCA"), pump. Dr. Smith was unsure as to the cause of this increased pain. The same day, Dr. Smith ordered Morphine, and Wright's PCA pump was changed from Dilaudid to Morphine 2 mg IV every 10 minutes. On February 23, 2007, Dr. Smith ordered that Wright's PCA pump be discontinued and that she receive Morphine 5 mg IV every two hours as needed for severe pain in the right lower quadrant.

On February 23, 2007, Dr. Richard S. Buddington, M.D., a pathologist, issued a pathological report of the specimen submitted from Wright's surgery. The report stated that "there is no actual appendix identified in the material examined." However, Dr. Buddington noted that additional tissue had been submitted, and an addendum would be prepared upon completion of analysis thereon. Despite Dr.

---

[1]There are some references to Wright's surgery having been performed on February 20, 2007, and other references to it having been performed on February 21, 2007. Dr. Smith's surgical note has not been provided to the court.

Buddington's pathology report, which Dr. Smith reviewed on February 24, 2007, Dr. Smith took no action to determine whether or not he had, in fact, removed Wright's appendix, nor did he inform Wright of Dr. Buddington's report. That same day, a progress note by Dr. Smith indicated that Wright continued to have right lower quadrant pain. Nonetheless, he discharged her from the hospital. Two days later, on February 26, 2007, Dr. Buddington issued the pathological addendum, stating that no actual appendix was found in the additional tissue. Again, Dr. Smith took no action to determine whether or not he had, in fact, removed Wright's appendix, nor did he inform her of these pathological results.

Wright saw Dr. Smith on March 1, 2007, for her only postoperative visit, at which time she was continuing to experience problems including abdominal pain. According to Wright, Dr. Smith informed her that he was confident that he had removed her appendix, that her problems would resolve over time and that there was not much else he could do for her. The progress note from this office visit indicates that "I told her if she isn't better in a few weeks to come back to see me. Otherwise, I'm not sure there is much else we can do. This should resolve over time." (Exhibit 3 to Docket Item No. 36). Following this office visit, Wright continued to experience abdominal pain, but she states that she "suffered through [it]" given Dr. Smith's assurances on March 1, 2007.

On August 13, 2007, Wright presented to the emergency department at Wellmont Bristol Regional Medical Center, ("BRMC"), due to severe right lower quadrant pain. She was diagnosed with chronic appendicitis by the emergency room physician, who consulted Dr. Michael D. Rowell, M.D., a general surgeon. Dr. Rowell admitted Wright to the hospital, and on August 17, 2007, he surgically

removed her ileum, cecum and appendix. The pathology report following Dr. Rowell's surgery showed a terminal ileum and cecum with retrocecal appendix showing chronic appendicitis with perforation. Wright was discharged on August 22, 2007, but has continued to receive medical treatment for resulting problems since that time, including abdominal pain due to adhesions from the surgeries and loose stools.

## *II. Analysis*

The defendant, ASA, argues that summary judgment should be granted in its favor because Dr. Smith was not employed by it at any time relevant to the plaintiff's claim. The plaintiff is seeking partial summary judgment in her favor on the affirmative defenses of contributory negligence and mitigation of damages. With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most

-4-

Case 1:08-cv-00052-GMW-PMS Document 41 Filed 06/26/09 Page 4 of 15 Pageid#: 430

favorable to the plaintiff on ASA's motion for summary judgment, and the court will view the facts and inferences in the light most favorable to ASA on the plaintiff's motion for partial summary judgment. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

It is well-settled that federal courts sitting in diversity, as here, must apply the choice of law provisions of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941). Here, Virginia is the forum state. It further is well-settled in Virginia that the law of the place of the wrong or injury, in this case Virginia, controls substantive issues, while the law of the forum, also Virginia, controls procedural issues. *See Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993).

*A. ASA's Motion For Summary Judgment*

Wright has sued ASA under a theory of vicarious liability, particularly, respondeat superior. Under respondeat superior, an employer is vicariously liable for an employee's tortious acts committed within the scope of employment. *See Plummer v. Center Psychiatrists, Ltd.*, 476 S.E.2d 172, 173-74 (Va. 1996) (citing *Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987) & *McNeill v. Spindler*, 62 S.E.2d 13, 17 (Va. 1950)). In her Complaint, Wright alleges that Dr. Smith was an employee, agent and/or servant of ASA at all times relevant to this action. ASA argues that summary judgment should be granted in its favor, and the court should dismiss it as

-5-

a party to this action, because Dr. Smith was not employed by ASA at any time relevant to his treatment of Wright.

The parties have produced conflicting evidence on this issue. ASA has tendered evidence to the court, including an affidavit from Dr. Smith, stating that his Employment Agreement with ASA terminated effective December 31, 2006. (Exhibit 1 to Docket Item No. 27, ("Smith Affidavit"), at 1.) He further stated that, effective January 1, 2007, he agreed to resign from his employment at ASA and to become an employee of Abingdon Physician Partners, ("APP"), an affiliate of Johnston Memorial Hospital. (Smith Affidavit at 1-2.) Dr. Smith stated that all of his care of Wright occurred from February 20, 2007, through March 1, 2007. (Smith Affidavit at 2.) He further stated that it was APP that billed Medicaid for his services to Wright, and he has submitted a ledger sheet showing such. (Smith Affidavit at 2; Exhibit A to Smith Affidavit.) Dr. Smith stated that all of his treatment of Wright was as an employee of APP, not as an employee of ASA. (Smith Affidavit at 2.)

Wright has replied to ASA's motion by submitting evidence that it contends creates a genuine issue of material fact as to whether Dr. Smith was an employee of ASA at the time he treated her in February and March 2007. Specifically, Wright has submitted various tax returns of Dr. Smith and ASA. In particular, Dr. Smith's tax return for 2007 shows $32,696 in wages from ASA and $263,908 from APP. (Exhibit A to Docket Item No. 29.) A 2007 Form 1120 U.S. Corporation Income Tax Return for ASA shows Dr. Smith as the President of ASA, and it further reflects that he devoted 100 percent of his time to ASA. (Exhibit A to Docket Item No. 29.) Wright also has supplied the court with a Practitioner Profile of Dr. Smith from the Virginia Board of Medicine, updated on October 7, 2008, listing Dr. Smith's primary practice

-6-

as ASA. (Exhibit B to Docket Item No. 29.) According to the information contained on this website, the physician is responsible for submitting accurate information to the Board. This Practitioner Profile reflects that Dr. Smith spent 40 percent of his time at the ASA location on White Street, seeing patients on Tuesdays and Fridays. (Exhibit B to Docket Item No. 29.) Moreover, a Virginia State Corporation Commission document shows that on January 4, 2008, Dr. Smith was the registered agent for and the President of ASA. (Exhibit E to Docket Item No. 29.) A 2007 Annual Report of the Virginia State Corporation Commission shows Dr. Smith to be the registered agent for and the President of ASA. (Exhibit E to Docket Item No. 29.) Dr. Smith signed this form on February 19, 2007, approximately one day before Wright's surgery, affirming that the information contained in the report was true and accurate. (Exhibit E to Docket Item No. 29.) The 2008 Annual Report, reflecting that Dr. Smith was the registered agent and President of ASA, was signed by him on March 25, 2008, affirming that the information was true and accurate. (Exhibit E to Docket Item No. 29.)

Dr. Smith also has submitted a supplemental affidavit, averring that the tax returns offered by Wright show nothing more than that he was an officer of ASA during the time period relevant to Wright's claim. (Exhibit A to Docket Item No. 31, ("Supplemental Affidavit"), at 1-2.) Dr. Smith further stated that his personal income tax returns showing income from ASA was for accounts receivable remaining from 2006 and was not related to any treatment of Wright. (Supplemental Affidavit at 1.) He further explained that the reference on ASA's 2007 income tax return to his devoting 100 percent of his time to ASA was meant to reflect that he spent 100 percent of time on behalf of that corporation as an officer of that company, not as an employee. (Supplemental Affidavit at 2.) Moreover, ASA argues that the statement

of primary practice address on the Virginia Board of Medicine website does not create an issue of fact regarding Dr. Smith's employment because the website merely requests the practice address, not the name of the actual employer. Thus, the defendants argue that this does not constitute proof of Dr. Smith's employment. Instead, Dr. Smith stated that when he became an employee of APP, the practice remained in the same location as ASA, and APP obtained the right to use the name "Abingdon Surgical Associates," which is listed on the door of the practice. However, the defendants contend that none of this information changes the fact that all of Dr. Smith's treatment of the plaintiff was as an employee of APP, and not as an employee of ASA.

The record before the court clearly contains conflicting evidence as to whether Dr. Smith was an employee, servant or agent of ASA during the time he treated Wright. While Dr. Smith has tendered affidavits swearing under oath that he was not such an employee, servant or agent of ASA during the relevant time period, the plaintiff has tendered evidence in the form on ASA's 2007 income tax return, on which Dr. Smith stated that 100 percent of his time in 2007 was devoted to ASA. Viewing this evidence in the light most favorable to Wright, a genuine issue of material fact exists regarding Dr. Smith's connection to ASA during the time he treated Wright, and a reasonable jury could find, based on the evidence currently before the court, that Dr. Smith was, in fact, an employee, servant or agent of ASA. For this reason, I find that it is inappropriate to grant summary judgment in favor of ASA on this ground at this time.

*B. Wright's Motion For Partial Summary Judgment*

Wright argues that partial summary judgment should be granted in her favor on the affirmative defenses of contributory negligence and failure to mitigate damages. In their answers to Wright's Second Interrogatories, the defendants stated that by including these defenses in their Answer, they intended to rely on them "if supported by the evidence." Therefore, they intended only to preserve possible defenses, not affirmatively assert them at that time. The defendants continued by stating that, while the parties had been deposed, no experts had formally been identified nor had any been deposed. Thus, they claimed that it was premature to know whether either the plaintiff's experts' explanation or the defendants' experts' explanation "for the condition which Dr. Smith found at his surgery on plaintiff or the condition which Dr. Rowell found at his surgery on plaintiff may tend to show that the condition was caused, in whole or in part, by plaintiff's delay in obtaining medical treatment for her condition." The defendants stated that after the respective experts had been deposed and discovery otherwise had been completed, they expected either to point out evidence in support of their potential defenses of contributory negligence or failure to mitigate damages, or else to withdraw those defenses.

The defendants, in their Memorandum In Opposition To Plaintiff's Motion For Partial Summary Judgment, (Docket Item No. 32), now seek to withdraw the affirmative defense of contributory negligence. That being the case, I find that Wright's motion with regard thereto should be denied as moot. However, the defendants argue that there is evidence to support the affirmative defense of Wright's failure to mitigate damages.

-9-

I note at the outset the plaintiff's argument that the defendants raised these "potential" affirmative defenses in their Answer, claiming that the appropriate vehicle by which to raise these defenses would be an amendment to the pleadings once evidence came to light in support of such defenses. The court will not spend much time addressing this issue, as the defendants now seek to withdraw the affirmative defense of contributory negligence and, for the reasons set forth below, they now have produced some evidence to support a failure to mitigate damages defense. The plaintiff would have the court grant summary judgment on this issue in her favor only to have the defendants file a motion to amend their pleadings. Given the evidence now before the court, any such motion likely would be granted, essentially placing the parties in the same position they now are in. To do so would be merely to exalt form over substance – something this court is not willing to do.

The affirmative defense of mitigation of damages recognizes that a plaintiff's conduct following a defendant's negligence "may be a reason for reducing damages," but it does not necessarily bar all recovery. *See Monahan v. Obici Med. Mgmt. Servs., Inc.*, 628 S.E.2d 330, 337 (Va. 2006) (quoting *Sawyer v. Comerci*, 563 S.E.2d 748, 754 (Va. 2002)). A patient's duty to mitigate damages after receiving negligent medical care is a specific application of the general requirement that "[o]ne who is injured by the wrongful or negligent acts of another . . . is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover." *Monahan*, 628 S.E.2d at 338-39 (quoting *Haywood v. Massie*, 49 S.E.2d 281, 284 (Va. 1948) as quoted in *Lawrence v. Wirth*, 309 S.E.2d 315, 317 (Va. 1983)). It has been held that a mitigation of damages instruction is

-10-

Case 1:08-cv-00052-GMW-PMS   Document 41   Filed 06/26/09   Page 10 of 15   Pageid#: 436

appropriate when the evidence shows that the plaintiff failed to mitigate his damages by "neglect[ing] his health following his physician's negligent treatment." *Sawyer*, 563 S.E.2d at 754 (quoting *Lawrence*, 309 S.E.2d at 317). The Virginia Supreme Court has held that post-operative instructions and the content of a conversation with a nurse on the day following surgery are relevant to the determination of whether a patient failed to mitigate damages. *See Holley v. Pambianco*, 613 S.E.2d 425, 429 (Va. 2005). Moreover, as the Supreme Court of Virginia held in *Lawrence*, due to the great disparity in medical knowledge between doctor and patient, the patient is entitled to rely upon assurances made by the doctor and, generally, need not seek the opinions and services of others. *See* 309 S.E.2d at 317 (citing *Fairchild v. Brian*, 354 So.2d 675, 680 (La. Ct. App. 1977)). Also, whether the plaintiff acted reasonably to minimize her damages is a question for the jury. *See Lawrence*, 309 S.E.2d at 318. Because mitigation of damages is an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to mitigate damages. *See Monahan*, 628 S.E.2d at 336.

The undersigned finds that, at this stage in the proceedings, the defendants have proffered evidence that a reasonable jury could find shows that Wright failed to mitigate her damages. For instance, the defendants argue that Wright's failure to mitigate her damages is evidenced by her suffering chronic pain for approximately six months without returning to see Dr. Smith, who by her own words, stated that he had informed her to return to him if she experienced symptoms "out of the protocol," and by not seeking emergency treatment until she began suffering excruciating pain for multiple days. (Exhibit 2 to Docket Item No. 32, ("Wright Deposition"), at 36-37). It is true that Wright testified at her deposition that she continued to be sick and experienced chronic pain following the February 2007 surgery. Moreover, Dr. Smith

-11-

testified during his deposition that at Wright's one postoperative visit on March 1, 2007, he informed her that if her pain continued, she should return to see him. (Exhibit 1 to Docket Item No. 36, ("Smith Deposition"), at 72). This is corroborated by Dr. Smith's progress note from March 1, 2007, which states: "I told her if she isn't better in a few weeks to come back to see me." (Exhibit 3 to Docket Item No. 36). Wright further testified that between her March 1, 2007, office visit with Dr. Smith and her presentation to BRMC in August 2007, she mentioned her pain to a Dr. Swank on a couple of occasions.[2] (Wright Deposition at 36). However, she testified that Dr. Swank told her that it would take time to recover from the pain of her surgery. (Wright Deposition at 36). Wright did not present to the emergency department at BRMC until August 13, 2007, following multiple days of "excruciating" pain. (Wright Deposition at 36-37).

Wright argues that she relied on Dr. Smith's assurances that he had done all that he could for her and that her pain would resolve over time. If this was the only evidence of instructions or advice given to Wright following her surgery, the court would be hard-pressed to find sufficient evidence of failure to mitigate damages. However, the evidence before the court also shows that Dr. Smith had some potential differential diagnoses following the surgery, including cecal diverticulitis, Crohn's disease, Yersinia enterocolotis and mesentery adenitis, and he testified at his deposition that he informed Wright of this at her postoperative visit. (Smith Deposition at 73). Thus, there is evidence that Dr. Smith had advised Wright that there could be something else going on that might need to be addressed. He testified at his deposition that had Wright returned to see him with continuing pain, he would

---

[2]No treatment notes from Dr. Swank have been provided to the court.

have performed a colonoscopy and another CT scan. (Smith Deposition at 73). Dr. Smith also clearly informed Wright to return to see him if she was not better in a few weeks. As previously stated, Wright testified at her deposition that she continued to experience chronic pain for the six months between the time of Dr. Smith's surgery and her presentation to BRMC. However, she never returned to see Dr. Smith, despite his instruction to do so. Thus, the defendants have presented evidence that Wright failed to follow Dr. Smith's instructions to her following the February 2007 surgery.

Viewing the facts in the light most favorable to the defendants, I find that a reasonable jury could find that Wright failed to mitigate her damages. However, should the evidence of Wright's failure to mitigate damages evolve during the course of the trial so that she feels it necessary to object to the court's giving an instruction regarding such failure to mitigate, she may do so at the appropriate time.

For all of the reasons stated herein, I find that granting summary judgment in favor of the plaintiff on the defendants' failure to mitigate damages defense is inappropriate, and I recommend that the court deny the motion at this time. I also recommend that the court deny the plaintiff's summary judgment motion as it regards the defense of contributory negligence as the issue is now moot.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. A genuine issue of material fact exists as to whether Dr. Smith was an employee of ASA at times relevant to his treatment of Wright;

2. A genuine issue of material fact exists as to whether Wright failed to mitigate her damages by failing to return to Dr. Smith despite continuing sickness and chronic pain following the February 2007 surgery, and by failing to seek emergency treatment until experiencing "excruciating" pain for multiple days;

3. The defendants seek to withdraw the affirmative defense of contributory negligence; and

4. Based on the above, it is inappropriate to grant ASA's motion for summary judgment or the plaintiff's motion for partial summary judgment.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, I recommend that the court deny both ASA's and Wright's motions for summary judgment, (Docket Item Nos. 27 & 28).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C);

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of

court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel and unrepresented parties of record.

ENTER: June 26, 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-15-