# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **KANDIE R. WRIGHT,** | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 1:08cv00052 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DAVID H. SMITH, M.D.** | ) | **MEMORANDUM OPINION** |
| **and ABINGDON SURGICAL** | ) | |
| **ASSOCIATES, P.C.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | By: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

This case is currently before the court on the defendants' motion in limine. (Docket Item No. 34) ("Motion"). The Motion is before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(A). The Motion was heard on June 19, 2009. Based on the parties' arguments and representations to the court, and for the reasons set forth below, the Motion will be granted in part and denied in part.

## I. Facts

On February 20, 2007, Wright presented to the emergency department at Johnston Memorial Hospital, ("JMH"), in Abingdon, Virginia, and was diagnosed with acute appendicitis with probable rupture. The emergency room physician consulted with the defendant, Dr. David H. Smith, M.D., a surgeon, who admitted

Case 1:08-cv-00052-GMW-PMS   Document 42   Filed 06/30/09   Page 1 of 13   Pageid#: 442

Wright to the hospital with a diagnosis of acute appendicitis. On the same day,[1] Dr. Smith attempted an appendectomy on Wright. Dr. Smith submitted the tissue removed from Wright's abdomen to pathology, but the pathologist was not able to identify an "actual appendix" in the tissue removed from Wright.

On August 13, 2007, Wright presented to the emergency department at Wellmont Bristol Regional Medical Center, ("BRMC"), due to severe right lower quadrant pain. She was diagnosed with chronic appendicitis by the emergency room physician, who consulted Dr. Michael D. Rowell, M.D., a general surgeon. Dr. Rowell admitted Wright to the hospital, and on August 17, 2007, he surgically removed her ileum, cecum and appendix. The pathology report following Dr. Rowell's surgery showed a terminal ileum and cecum with retrocecal appendix showing chronic appendicitis with perforation. Wright was discharged on August 22, 2007.

Some of Wright's medical bills incurred for the February 2007 hospitalization and surgery at JMH were paid by the Virginia Department of Medical Assistance Services, ("Medicaid").

## II. Analysis

The Motion asks the court to exclude from opening statements, argument by counsel and evidence at trial the following: (1) medical bills or other damages for

---

[1]There are some references to Wright's surgery having been performed on February 20, 2007, and other references to it having been performed on February 21, 2007. Dr. Smith's surgical note has not been provided to the court.

-2-

treatment that the plaintiff would have required regardless of the defendants' alleged negligence; (2) medical bills or other damages for treatment unrelated to the defendants' alleged negligence; and (3) any and all amounts for medical treatment that the plaintiff claims to be related to the defendants' alleged negligence to the extent that such amounts exceed the amounts which were approved for payment by Medicaid. In particular, the defendants ask that the plaintiff be required to elect whether she will claim the expenses of the surgery performed by Dr. Smith or the surgery performed by Dr. Rowell as damages. The defendants further contend that any medical expenses submitted into evidence should be reduced by the amount disallowed by Medicaid as exceeding the "reasonable and customary charges" for such services.

Since this is a diversity case, the court, under *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938), must apply Virginia substantive law. While the Motion addresses the evidence the court will allow to be presented at trial, the court's decision turns on the types of damages that are allowed in personal injury cases under Virginia substantive law. Thus, Virginia substantive law, insofar as it can be discerned by this court, controls.

First, the defendants argue that Wright cannot recover for both the surgery performed by Dr. Smith and the surgery performed by Dr. Rowell. They argue that, at most, Wright claims that she underwent two surgeries for a condition – appendicitis – that should have been corrected in one surgical procedure. However, in her discovery responses, Wright states that she is claiming as damages medical bills for both surgeries. The defendants contend that Wright is improperly seeking to obtain

-3-

the appendectomy for free. To support their argument, the defendants cite to *Fitzgerald v. Manning*, 679 F.2d 341, 346-47 (4th Cir. 1982), for the proposition that in order to recover damages for alleged malpractice, a qualified expert must testify, to within a reasonable degree of medical certainty, that the damages in question were causally related to the negligence of the defendant. The defendants argue that, in this case, Wright developed appendicitis through no fault of her own, but also through no fault of the defendants, and she required an appendectomy to cure her condition. They assume that Wright is claiming the expenses of the surgery by Dr. Smith as damages because that surgery did not accomplish its intended purpose, and she claims the expenses of the surgery by Dr. Rowell on the theory that it would not have been necessary if Dr. Smith had removed her appendix. However, the defendants claim that Wright is not entitled to the appendectomy free of charge. Instead, they argue that she should be required to elect which surgery she will include in her claim for damages.

Although the defendants advance the above-stated argument, they point the court to no case law to support these propositions, and the court has found none. Instead, the court will rely on general damages principles and common sense in deciding this issue. It is well-settled that an injured person is entitled to recover all damages caused by a defendant's negligence. *See Lawrence v. Wirth*, 309 S.E.2d 315, 318 (Va. 1983) (citing *Blair v. Eblen*, 461 S.W.2d 370 (Ky. 1970)). It is not disputed that Wright's appendicitis required surgical attention. Moreover, as the defendants argue, Wright's appendicitis was in no way caused by any negligence on Dr. Smith's part. When she presented to Dr. Smith for the first time on February 20, 2007, she was diagnosed with appendicitis, and it was determined that she needed an

-4-

appendectomy. While it is true that had Dr. Smith removed Wright's appendix, she would not have had to undergo the second surgery by Dr. Rowell, she, nonetheless, still would have had to undergo one successful surgery for the removal of the appendix. Allowing Wright to recover damages for both surgeries would create a windfall to the plaintiff, in that, as the defendants point out, she would essentially receive her appendectomy free of charge. Because no negligence by Dr. Smith caused Wright to have to undergo an appendectomy, this would be an unfair result to the defendants and one that the court will not allow. All of this being said, the court finds the defendants' argument that Wright must elect to pursue the costs of either the surgery performed by Dr. Smith or that performed by Dr. Rowell as damages persuasive.

Next, the defendants argue that Wright cannot recover damages that are not causally related to the negligence of Dr. Smith. In order to establish a prima facie case of medical malpractice, the plaintiff bears the burden of establishing: (1) the applicable standard of care; (2) that the standard has been violated, and; (3) that there is a causal relationship between the violation and the alleged harm. *See Fitzgerald*, 679 F.2d at 346. The defendants argue that several months after Dr. Smith's surgery, Wright was admitted to BRMC, where she was initially treated for medical problems unrelated to any treatment, or alleged lack of treatment, by Dr. Smith. Such problems included a lower venous duplex study, a pulmonary medicine consultation, treatment for a urinary tract infection and treatment for headaches. The defendants are correct that Wright has not alleged that any such conditions were related to any negligence of Dr. Smith, nor does the Rule 26 report from Wright's expert state that any such problems were caused by Dr. Smith. Therefore, the defendants argue that those

Case 1:08-cv-00052-GMW-PMS   Document 42   Filed 06/30/09   Page 5 of 13   Pageid#: 446

medical problems, and the expenses of diagnosing and treating them, are not recoverable as damages.

As stated above, an injured person is entitled to recover all damages caused by a defendant's negligence. *See Lawrence*, 309 S.E.2d at 318 (citing *Blair*, 461 S.W.2d 370). Thus, the inverse is true – that any damages not caused by a defendant's negligence are not recoverable. It is the burden of the plaintiff to show, through expert testimony, that a defendant's negligence is the proximate cause of a plaintiff's damages. *See Reed v. Church*, 8 S.E.2d 285, 293 (Va. 1940). That being the case, I find that, to the extent that Wright fails to show any causal relationship between certain medical conditions and related expenses and the defendants' alleged negligence, she cannot recover for those medical expenses in this action.

Additionally, the defendants argue that the plaintiff must show, through expert testimony, that her three days' hospitalization prior to her surgery by Dr. Rowell, and the five days' hospitalization following that surgery, were causally related to the defendants' negligence and were reasonably and medically necessary. They cite Virginia Code Annotated § 8.01-413.01, relating to the authenticity and reasonableness of medical bills, which provides as follows:

> In any action for personal injuries . . . the authenticity of bills for medical services provided and the reasonableness of the charges of the health care provider shall be rebuttably presumed upon identification by the plaintiff of the original bill or a duly authenticated copy and the plaintiff's testimony (i) identifying the health care provider, (ii) explaining the circumstances surrounding his receipt of the bill, (iii) describing the services rendered and (iv) *stating that the services were rendered in connection with treatment for the injuries received in the*

-6-

*event giving rise to the action.*

VA. CODE ANN. § 8.01-413.01(A) (2007 Repl. Vol.)  The defendants further cite *McMunn v. Tatum*, 379 S.E.2d 908, 913 (Va. 1989), in which the Virginia Supreme Court held that proof of medical expenses by the introduction of bills through the sole testimony of the plaintiff requires consideration of four major components: (1) authenticity, (2) reasonableness in amount, (3) medical necessity, and (4) causal relationship. Stated differently, a defendant, whose liability for a plaintiff's damages has been established, is only responsible for those medical bills which are (1) authentic, i.e., accurate statements of charges actually made by those who provided the services to the plaintiff for which recovery is claimed; (2) reasonable, i.e., not excessive in amount, considering the prevailing cost of such services; (3) medically necessary, i.e., reasonably necessary in the opinion of experts qualified in the appropriate field to cure the plaintiff, ameliorate his injuries, or relieve his suffering, not the product of overtreatment or unnecessary treatment; and (4) rendered necessary solely by a medical condition proximately resulting from the defendant's negligence, not by an unrelated or preexisting condition except to the extent such a condition was aggravated by the defendant's negligence.  *See McMunn*, 379 S.E.2d at 913.  The court in *McMunn* also stated that the question of whether a particular treatment is medically necessary, as well as the often more difficult question of whether such treatment is causally related to a condition resulting from some act or omission on a defendant's part, can usually be determined only by a medical expert qualified in the appropriate field who has studied the plaintiff's particular case.  *See McMunn*, 379 S.E.2d at 914.  Thus, the *McMunn* court held that where a defendant objects to the introduction of medical bills, indicating that the defendant's evidence will raise a substantial contest as to either the question of medical necessity or the question of

causal relationship, the court may admit the challenged medical bills only with foundation expert testimony tending to establish medical necessity or causal relationship, or both, as appropriate. *See McMunn*, 379 S.E.2d at 914.

Here the defendants have put Wright and her counsel on notice that they are objecting to portions of the medical bills related to Wright's August 13-22 admission at BRMC. That being the case, I find that Wright must establish through expert testimony that her hospitalization and treatment at BRMC immediately prior to and following her surgery was causally related to the defendants' negligence and was reasonable and medically necessary.

Lastly, the defendants argue that Wright cannot seek to recover as damages any portion of her medical bills that were written off by Medicaid. The evidence before the court shows that Medicaid paid at least $5,589.90 of Wright's medical expenses related to her February 2007 hospitalization and surgery. The court does not have evidence before it with regard to any amounts charged by the medical providers for these services. Nonetheless, as the defendants explain in their brief, health care providers who participate in the Medicaid program are required by law to enter into agreements that provide that they will not collect from the Medicaid patient, or any other source, the difference between the charges billed and the amount paid by Medicaid, with the exception of certain co-payments and deductibles. *See* 42 C.F.R. § 447.15 (2008); VA. CODE ANN. §32.1-317 (2004 Repl. Vol.); *see also McAmis v. Wallace*, 980 F. Supp. 181, 182 (W.D. Va. 1997). As a result of these agreements, following Medicaid's "adjustment" of the medical bill from the health care provider, the difference between the original bill and the amount that Medicaid and the patient

Case 1:08-cv-00052-GMW-PMS   Document 42   Filed 06/30/09   Page 8 of 13   Pageid#: 449

actually pay is "written off." That means that no one may collect this difference from the patient. As the defendants note, these bills are extinguised as a matter of law and are treated as if they never existed.

The defendants also argue that Virginia's collateral source rule does not apply to write offs due to state or federal law, as here, but only to write offs due to agreements between health care providers and private health insurance carriers. The collateral source rule provides that benefits received by an injured claimant from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. *See Acuar v. Letourneau*, 531 S.E.2d 316, 320 (Va. 2000). Under this rule, the wrongdoer cannot enjoy any benefits which may arise from contracts or from any other relation that may exist between the injured claimant and a third party which is wholly independent of the wrongdoer. *See Schickling v. Aspinall*, 369 S.E.2d 172, 174 (Va. 1988); *see also* VA. CODE ANN. § 8.01-35 (2007 Repl. Vol.) The collateral source rule is designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation to make him whole, but no more, and; (2) a defendant is liable for all damages that proximately result from his wrong. *See Schickling*, 369 S.E.2d at 174.

The Virginia Supreme Court has not yet determined whether the collateral source rule would allow a personal injury plaintiff, whose medical expenses were covered by Medicaid, to seek damages for the amount charged for medical treatment rather than for only the amount paid for medical treatment. Therefore, this court must attempt to predict what the Virginia Supreme Court would hold in this case. *See Mitchell v. Hayes*, 72 F. Supp. 2d 635, 637 (W.D. Va. 1999) (citing *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999)). Based on the Virginia Supreme Court's recent

expansive view of the collateral source rule, I am of the opinion that, given the opportunity, the Virginia Supreme Court would hold that the collateral source rule would allow a personal injury plaintiff to seek damages for the full costs of medical treatment regardless of whether any amounts were written off under Medicaid or some other government-funded program.

In reaching this conclusion, I am aware that the presiding judge in this case, Senior United States District Judge Glen M. Williams previously analyzed this issue and reached the opposite conclusion in *McAmis*, 908 F. Supp. 181. However, that decision was reached before the Virginia Supreme Court's decision in *Acuar* and its even more expansive application of the collateral source rule in *Bullard v. Alfonso*, 595 S.E.2d 284 (Va. 2004). In light of the Virginia Supreme Court's decisions and reasonings in these case, I am forced to conclude that, given these facts, the court would hold that the collateral source rule allows a plaintiff to present evidence of the full amount charged by a health care provider regardless of the amount the provider accepts as payment.

In *Acuar*, the Virginia Supreme Court held that a personal injury plaintiff may present evidence of the "full amount of his reasonable medical expenses without any reduction for the amounts written off by his health care providers" pursuant to agreements with his health insurance carrier. 531 S.E.2d at 323. The court cited the Restatement (Second) of Torts in support of its conclusion. "'[I]t is the tortfeasor's responsibility to compensate for all harm that he [or she] causes, not confined to the net loss that the injured party receives.' Restatement (Second) of Torts § 920A cmt. b (1977)." *Acuar*, 531 S.E.2d at 323. Thus, the court held, "[t]o the extent that such

-10-

a result provides a windfall to the injured party, we have previously recognized that consequence and concluded that the victim of the wrong rather than the wrongdoer should receive the windfall." *Acuar*, 531 S.E.2d at 323 (citing *Schickling*, 369 S.E.2d at 174).

Subsequent to its decision in *Acuar*, the Virginia Supreme Court has specifically held that the collateral source rule also prevents a defendant from introducing evidence of the amounts accepted by health care providers as payment in full as evidence of the reasonable value of services. *See Radvany v. Davis*, 551 S.E.2d 347, 348 (Va. 2001). A year later, the court recognized that the collateral source rule prevents a tortfeasor from benefitting from any payment made to a tort victim from any source other than from the tortfeasor himself. "'If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself. If the benefit was a gift to the plaintiff from a third party or established for him by law, he should not be deprived of the advantage that it confers.'" *Acordia of Va. Ins. Agency v. Genito Glenn, L. P. ,* 560 S.E.2d 246, 251 (Va. 2002) (quoting Restatement (Second) of Torts § 920A cmt. b (1979)). In fact, the court has continually recognized that, while the collateral source rule originally involved money paid to a plaintiff by his own insurer, it has been expanded over the years to cover a number of other payments, including benefits provided by the operation of law, such as social security, unemployment and worker's compensation benefits. *See Acordia*, 560 S.E.2d at 251 (*quoting Schickling*, 369 S.E.2d at 174).

In *Bullard*, the Virginia Supreme Court further expanded the collateral source

-11-

rule to allow a plaintiff to seek damages for lost wages when, in fact, he lost no wages due to his injuries. *See* 595 S.E.2d at 287-88. In *Bullard*, the plaintiff was employed as a drywall hanger and plasterer by a subchapter S corporation of which the plaintiff was sole stockholder and president. *See Bullard*, 595 S.E.2d at 285. As a result of injuries sustained in a motor vehicle accident, the plaintiff was unable to perform his work as a drywall hanger and plasterer for six months. *See* 595 S.E.2d at 285. The employer continued to pay the plaintiff his full salary during the period that he was unable to work. *See* 595 S.E.2d at 285. Despite the fact that the plaintiff actually suffered no loss of income during his disability, the court allowed the plaintiff to seek damages for loss of income because of his disability. *See* 595 S.E.2d at 287-88. Furthermore, the court held that, under the collateral source rule, the defendant could not introduce any evidence that the plaintiff had continued to receive his full salary during his disability. *See* 595 S.E.2d at 287-88.

Judge Williams's earlier decision in *McAmis* concluded that contributions to the Medicaid system through payroll taxes are not analogous to private insurance premiums, thereby finding that the collateral source rule was inapplicable. In light of the Virginia Supreme Court's reasoning in *Acordia* that, under the collateral source rule, a plaintiff should not be deprived of a benefit provided for him by his prior agreements, gifts *or* the operation of law, I find that the Virginia Supreme Court would not agree with the distinctions made by the *McAmis* decision. For these reasons, I will deny the Motion and allow Wright to introduce, through argument or evidence, the full amounts charged by her health care providers.

An appropriate order shall be entered.

ENTER:      June 30, 2009.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE